Below is an Opinion of the Court.

*Elizabeth L. Perris*
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) |
| | ) Bankruptcy Case No. |
| WILLIAMS, LOVE, O'LEARY, | ) 11-37021-elp11 |
| & POWERS, P.C., | ) |
| | ) |
| Debtor. | ) |
| —————————————————————————————— | ) |
| | ) |
| WILLIAMS, LOVE, O'LEARY, | ) Adversary No. 11-3279-elp |
| & POWERS, P.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) |
| HEATHER A. BRANN, | ) |
| | ) |
| Defendant. | ) |

This matter came before the court on the parties' cross-motions for summary judgment. Before the January 13, 2012, hearing on the motions, I provided the parties with a tentative ruling. After hearing the arguments of the parties at the hearing and again reviewing the parties' submissions, I have not changed my conclusion, but have revised my reasoning as set out below.

Page 1 - MEMORANDUM OPINION

1    Defendant Heather Brann ("Brann") claims that amounts she is owed by

2    debtor Williams, Love, O'Leary & Powers, P.C. ("debtor") for services she

3    performed on what the parties refer to as the "Pain Pump" cases are

4    secured by an attorney's lien on the recoveries from the Pain Pump

5    cases.[1]  Debtor filed this adversary proceeding for a declaration that

6    Brann does not have a lien.  Both debtor and Brann move for summary

7    judgment.  Intervenor Sterling Savings Bank opposes Brann's motion.  The

8    sole issue is whether Brann has an attorney's lien securing her claim.

9    I conclude that Brann does not have an attorney's lien.  I will

10   grant debtor's motion for summary judgment and deny Brann's motion.

11                                    FACTS

12   Most of the facts are undisputed; it is only the significance and

13   legal effect of the facts that are at issue in this adversary proceeding.

14   Debtor is a law firm that has a national practice representing

15   individuals in medical product liability cases.  Over the past few years,

16   debtor has been representing clients in litigation relating to injuries

17   they claim was caused by portable devices used post-surgery to infuse

18   pain medication directly into shoulders ("Pain Pumps").

19   Each Pain Pump client entered into a Client Engagement Agreement

20   with debtor.  No clients entered into fee agreements with Brann.

21   Brann is an attorney licensed to practice law in Oregon.  In

22   November 2008, she began working with debtor on the Pain Pump cases,

23   pursuant to an oral fee agreement with debtor.  The agreement, which was

24

25        [1]   Brann is not precise about what the lien attaches to, but it
     appears that her theory is that it attaches to the portion of the
26   settlement and judgment recoveries on Pain Pump cases that went to debtor
     as attorney fees.

Page 2 -  MEMORANDUM OPINION

reduced to writing in a letter dated August 9, 2009,[2] provided that Brann
was engaged by debtor to work on clients' Pain Pump matters.[3]  It
provided that debtor would pay Brann for her legal services on Pain Pump
matters on an hourly basis, with a set rate for all hours worked ("First
Tier fees"), plus additional success-based hourly fees payable as cases
were successfully resolved.  After ten Pain Pump cases were successfully
resolved, debtor would pay Brann an additional hourly rate for the hours
worked ("Second Tier fees"); after more than fifty percent of the total
Pain Pump cases were successfully resolved, debtor would pay Brann an
additional hourly rate for the hours worked ("Third Tier fees").

Brann's agreement with debtor provides, as relevant here:

[Debtor] shall ensure that any client with respect to which I render
legal services for a [Pain Pump] Matter consents to [debtor] sharing
its fees with me.

. . . .

My hourly rates contemplate that the risk of any post-
settlement or post-entry-of-judgment delay in payments to [debtor's]
clients, reduction of legal fees by a court, insolvency of
responsible defendants (or responsible defendants' insurers),
disputes by [debtor] over fees with its associated counsel, or
voluntary reductions by [debtor] in fees or costs will be solely
borne by [debtor].  Such risks borne by [debtor] will not, however,
affect [debtor's] right to dispute any legal fees or cost
reimbursements billed by me to [debtor].

All legal fees and cost reimbursements <u>due to me from [debtor]</u>

---

[2]    The letter and a number of other exhibits were filed under
seal.  I understand that the portions of the exhibits that are quoted in
this Memorandum Opinion do not contain any information that the parties
seek to keep confidential.

[3]    The letter begins: "This letter will set forth the terms and
conditions of my engagement by [debtor] for work on clients' pain pump
matters[.]"  Brann Declaration Supporting Motion for Summary Judgment,
Exh. 2 at p.1.

Page 3 -  MEMORANDUM OPINION

(including First-Tier-Rate fees, Second-Tier-Rate fees, and Third-Tier-Rate fees) <u>will be payable to me by [debtor]</u> under the above terms, regardless of whether or not I am engaged by [debtor] at the time such payment obligations arise.

        The <u>legal services I provide to [debtor]</u> will be work for hire, and all information, processes, documents, files, and work product . . . will belong to [debtor].

Brann Declaration Supporting Motion for Summary Judgment, Exh. 2 at pp.2-3 (emphasis supplied).

        Debtor timely paid the First Tier fees prepetition.  Ten of the Pain Pump cases were successfully resolved prepetition, triggering debtor's obligation to pay the Second Tier fees, totaling $239,790.  Debtor does not dispute that the Third Tier fees of $479,580 are also now due. Debtor has not paid Brann any of the Second or Third Tier fees.

        Debtor filed a chapter 11 petition in August 2011.  It lists Brann as holding an unsecured claim for the Tier Two and Tier Three fees. Brann filed separate claims for the Tier Two and Tier Three fees, asserting that the claims are secured by an attorney's lien pursuant to ORS 87.445.  Debtor disputes that Brann's fees are secured by a lien, and it filed this declaratory judgment action to obtain a determination of the secured status of Brann's claims.  Sterling Savings Bank, which holds a security interest in debtor's assets, intervened in this proceeding.

                                    ISSUE

        Does a lawyer who associates on a case and has an agreement for compensation with the lawyer who hired her, but does not have an express or implied agreement for compensation with the client, have an attorney's lien on the client's cause of action and recovery or, instead, must the associated lawyer look to the hiring lawyer for payment?

Page 4 -  MEMORANDUM OPINION

The court shall grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a).[4]

It bears pointing out at the outset of this discussion what is not at issue in these motions, because Brann attempts to insert numerous issues that are irrelevant to whether she has a lien and that only serve to detract from the analysis of the motions. Debtor's complaint and the cross-motions for summary judgment are _not_ about how much debtor owes Brann for her work on the Pain Pump matters. Nor are the motions about whether debtor may have violated any ethical rules or the agreement with Brann by failing to obtain the clients' consent to Brann's representation of them. Nor is it relevant to these motions whether debtor engaged in any improper conduct in attempting to remove Brann as counsel of record on the Pain Pump matters or whether debtor improperly paid other associated counsel whose circumstances are similar to Brann's. The narrow question raised here is whether Brann has an attorney's lien securing her claims.

Brann claims that her fees are secured by an attorney's lien, pursuant to ORS 87.445. That statute provides:

> An attorney has a lien upon actions, suits and proceedings after the commencement thereof, and judgments, orders and awards entered therein in the client's favor and the proceeds thereof to

---

[4] Brann did not file an answer to debtor's complaint for declaratory judgment, but instead filed a motion for summary judgment in response to the complaint. Debtor does not challenge the procedure used here, and the court sees no impediment to proceeding directly to summary judgment under the circumstances of this adversary proceeding.

Page 5 - MEMORANDUM OPINION

the extent of fees and compensation specially agreed upon with the client, or if there is no agreement, for the reasonable value of the services of the attorney.

Brann argues that she is entitled to a lien under this statute under a number of different theories: (1) that she meets the definition of "attorney" in ORS 9.310; (2) that she was the attorney of record on the Pain Pump cases; (3) that the clients consented to her representation of them; or (4) that she became a party to the client retainer agreements.

Under the common law, the general rule is that an attorney has a charging lien on the client's cause of action for recovery of attorney fees, which

> is founded on the equity of an attorney being paid his fees and disbursements out of the judgment he has obtained.  It was created to protect the rights of an attorney unable to get possession against a client who seeks to avoid payment for services.  To put it more bluntly, it was created for the protection of attorneys against the knavery of their clients.

2 Robert L. Rossi, <u>Attorneys' Fees</u> § 12:13 (3d ed. 2011) (footnotes omitted).  It is "necessary to the existence of the lien that there be a valid contract for fees, either express or implied, entered into between the attorney and his client."  <u>Id.</u>

Oregon has codified the right to an attorney's lien, but the statute is consistent with the common law.  ORS 87.445 provides for a lien on the client's action and recovery, <u>i.e.</u> on the client's property.  <u>See</u> 7 AM.JUR.2D <u>Attorneys at Law</u> § 317 (2007) (attorney's charging lien gives attorney an equitable ownership interest in client's cause of action).  Although that lien may be enforced against third parties under certain circumstances, <u>see</u> <u>Potter v. Schlesser Co., Inc.</u>, 335 Or. 209 (2003), the lien itself attaches to the client's action and recovery as a tool for

Page 6 –   MEMORANDUM OPINION

collecting attorney fees owed by the client.  7 AM.JUR.2D <u>Attorneys at</u>
<u>Law</u> § 317.  "An attorney's charging lien is to be based upon the amount
agreed with the client" or, if there is no retainer agreement, "by the
reasonable value of the services rendered."  <u>Id.</u> at § 320 (footnotes
omitted).  Fundamental to the right to an attorney's lien on the client's
property is an agreement with the client that the client will be liable
for the attorney's fees.

These motions are governed by <u>Hahn v. Oregon Physicians' Serv.</u>, 786
F.2d 1353 (9th Cir. 1985).  In that case, the Ninth Circuit considered
facts that are indistinguishable from this case in any meaningful way.
There, the clients hired attorney King to represent them in anti-trust
litigation, entering into a retainer agreement that provided that part of
the compensation would be a contingent fee.  The agreement allowed King
to associate other counsel to assist him in the litigation.  King hired
Kane under an agreement that provided that King would pay Kane an hourly
fee plus 25 percent of any recovery King obtained in the litigation.

Both King and Kane acted as attorneys for the clients but resigned
from representation before the litigation concluded.  Both King and Kane
filed notices of attorney's liens.

King filed bankruptcy, listing Kane as an unsecured creditor.
Kane's claim against King was discharged.

The clients hired new counsel and successfully prosecuted the anti-
trust action.  Kane claimed a right to a contingency share of the
recovery, based on the client retainer agreement and his agreement with
King.  Kane had been paid his full hourly fee as agreed; at issue was his
right to a lien for a 25 percent contingency as agreed with King.

Page 7 –  MEMORANDUM OPINION

The Ninth Circuit held that Kane did not have an attorney's lien under ORS 87.445. The court explained that, although Kane had a claim to a part of King's share of the ultimate recovery, he did not have a claim to King's share before it was distributed to King.

> [B]ecause no independent contract between appellant and the
> [clients] ever existed, appellant does not have a right to a lien
> against the [clients'] recovery in this case even though his proper
> recourse for fees has been cut off as a result of King's bankruptcy.

786 F.2d at 1355. Kane's arrangement for fees was with King, not with the clients, and it was to King that Kane needed to look for payment of the fees.

The same can be said in this case. Brann entered into an agreement with debtor to provide legal services to debtor, for which she would be paid an hourly fee, with the amount of that fee based on the number of successfully resolved Pain Pump cases. The agreement, set out in a letter from Brann to Williams, provided "the terms and conditions of my engagement by" debtor. Brann Declaration Supporting Motion for Summary Judgment, Exhibit 2 at p.1. It further provided that debtor "will pay me for my legal services on [Pain Pump] Matters on an hourly basis," id. at p.2, and specified that

> the risk of any post-settlement or post-entry-of-judgment delay in
> payments to [debtor's] clients, reduction of legal fees by a court,
> insolvency of responsible defendants (or responsible defendants'
> insurers), disputes by [debtor] over fees with its associated
> counsel, or voluntary reductions by [debtor] in fees or costs will
> be solely borne by [debtor].

Id. at p.3. Nothing in the agreement made Brann's fees dependent on debtor obtaining recoveries of a certain amount from the litigation, or even tied Brann's fees to those Pain Pump matters for which she provided

Page 8 -   MEMORANDUM OPINION

services. Under the agreement, debtor, not the clients, is responsible to pay Brann's fees, and Brann is entitled to the fees regardless of how much or from what clients or matters debtor collects fees.

Brann argues that Hahn is distinguishable, because it is a successive counsel case, and this case involves co-counsel, not successive counsel. I disagree that the cases are distinguishable on that basis. Although in Hahn, King and Kane withdrew as counsel before any recovery was obtained for the client, that was not the basis for the court's decision. The issue was not the fees owed by the client or the split of fees as between King and the successor counsel; the issue was whether Kane had a lien on the clients' recovery based on his agreement with King. The Ninth Circuit unequivocally held that the unpaid lawyer must look to the attorney who hired him, not to the client's property, for payment.

Brann argues that she is entitled to a lien under ORS 87.445 because she meets the statutory definition of "attorney," contained in ORS 9.310, as "a person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof." Because she was authorized to represent clients in the underlying actions, she argues that she is entitled to the lien provided in ORS 87.445.

Even assuming that the definition of attorney contained in ORS 9.310 applies in ORS chapter 87, ORS 87.445 requires more than attorney representation of a client or appearance in an action; it provides for a lien "to the extent of fees and compensation specially agreed upon with the client, or if there is no agreement, for the reasonable value of the services of the attorney." ORS 87.445. Appearing to represent a client

is not enough; there must be an agreement, express or implied, <u>between the attorney and the client</u> for compensation.

She argues, relying on <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 140 F.3d 442 (2d Cir. 1998), that she is entitled to an attorney's lien because she was the attorney of record in many of the Pain Pump matters. In <u>Itar-Tass</u>, the Second Circuit considered whether, under New York law, the lawyer asserting a charging lien for services in the case was the "attorney of record." The New York statute specifically provides for an attorney's lien for the "attorney of record." Attorney Daniel had been retained by the lawyer hired by the client. Daniel signed and submitted documents in the client's case and appeared in court for the client. The fact that he was designated "of counsel" on some of the pleadings did not preclude the court from concluding that he was the attorney of record and was thus entitled to an attorney's lien under the statute.

Brann argues that the same applies here. She signed pleadings and appeared in court for many of the clients. Therefore, she argues, she was attorney of record and so is entitled to an attorney's lien.

The problem is that, contrary to Brann's argument, Oregon's lien statute is different from New York's. ORS 87.445 provides that an attorney has a lien "to the extent of fees and compensation specially agreed upon with the client[.]" Under <u>Hahn</u>, the statute does not give rise to a lien unless the attorney has an agreement for compensation with the client. Unlike in New York, the right to a lien is not based on whether the attorney appeared for the client or was the attorney of record. What is relevant is the agreement between the lawyer and

Page 10 - MEMORANDUM OPINION

client.[5]

Brann next argues that she is entitled to a lien either because the clients consented to her representation or because she became a party to the retainer agreements between debtor and the clients. She relies on the provision in her agreement with debtor that debtor would "ensure that any client with respect to which I render legal services for a [Pain Pump] Matter consents to [debtor] sharing its fees with me," Brann Declaration Supporting Motion for Summary Judgment, Exh. 2 at p.2, and on the provisions in the client retainer agreements that the clients agreed that named counsel, including debtor, could share fees with other associated counsel.

The undisputed evidence does not support either argument. First, the fact that the clients may have consented to debtor associating Brann to work on their cases and to debtor sharing its fee with Brann is not sufficient to establish a contract between Brann and the clients for the payment of her fees. The fee agreements between the clients and debtor were in one of two forms. One form of agreement recognized that debtor would be sharing fees with two other named law firms, and that the firms would be sharing the attorney fees in the case. It also provided:

> If my attorneys associate with any other attorney in another law firm, any fees earned may be shared between those attorneys as well.

---

[5]    I am not persuaded by Brann's argument that the Oregon Supreme Court has said that New York's attorney's lien statute is similar to Oregon's. In <u>Potter</u>, Justice DeMuniz quoted a New York case on the subject of enforcement of the attorney's lien against the opposing party. 335 Or. at 215 n.3. That does not mean that the Oregon court would conclude that any attorney who is entitled to a charging lien under New York law would be entitled to such a lien under Oregon's statute, where the language is different.

Page 11 - MEMORANDUM OPINION

The sharing of attorney fees will not cost me any more money because the total amount of fees I owe will remain the same . . . .   I will be notified of, and will be asked to approve of, any change in these fee-sharing percentages.

Declaration of Michael L. Williams (A) In Support of Plaintiff's Motion for Summary Judgment and (B) In Opposition to Defendant's Motion for Summary Judgment, Exh. 2 at p.2.  The second form of fee agreement between debtor and the clients provided for retention of debtor and other named attorneys, and provided that the client agreed that the named attorneys

may associate additional lawyers/firms to assist with this case and Client agrees to the sharing of fees between lawyers.  Client understands the terms herein apply to other lawyers associated on this case and that association of other lawyers or law firms does not increase the amount of attorney fee due to lawyers on successful resolution of the claim.

Id., Exh. 3.

The clients' recognition that named counsel might associate with other counsel and could share their fees with associated counsel does not constitute an agreement that the client will be liable for Brann's fees. As the Ninth Circuit pointed out,

"[N]either knowledge and acquiescence, nor consent by the client, is sufficient to make the client liable, in the absence of circumstances from which it can be inferred by the client that the fees are to be paid for by him."

Hahn, 786 F.2d at 1355 (quoting Volume 7A, C.J.S. Attorney and Client § 297 (1980)).  Because an attorney's lien is a mechanism to enforce an attorney's right to compensation from the client, and because the client's mere knowledge of or consent to retained counsel associating other counsel to work on the case is not sufficient to constitute an

Page 12 - MEMORANDUM OPINION

agreement by the client to pay fees to associated counsel, the retainer
agreements do not give rise to an attorney's lien for Brann's fees.

Second, Brann argues that she became a party to the retainer
agreements based on the same language as quoted above. But she does not
explain how the clients' agreement that named counsel, who are entitled
to a specific amount of fees, may associate with other counsel and share
the fees results in a contract between the clients and the associated
counsel enforceable by an attorney's lien. Nothing in the retainer
agreements indicates an express or implied agreement by the clients that
they would be responsible for payment of Brann's fees, the amount of
which is set by Brann's agreement with debtor. If her fees would be
calculated according to her agreement with debtor, in theory Brann's
compensation in a particular case could exceed the amount of recovery
received by the client, because her fee is based on an hourly rate
regardless of the value of the particular recovery in a particular case.
This illustrates the flaw in Brann's argument.

Brann next argues that Hahn has been effectively overruled by Potter
v. Schlesser Co., Inc., 335 Or. 209 (2003), and Banaitis v. C.I.R., 340
F.3d 1074 (9th Cir. 2003), overruled on other grounds sub nom C.I.R. v.
Banks, 543 U.S. 426 (2005). I disagree.

In Potter, the Oregon Supreme Court considered whether an attorney
for a plaintiff in a civil action could enforce an attorney's lien for
fees against the defendant in the action who had settled with the
plaintiff without the attorney's knowledge and without satisfying the
attorney's lien for his fees. There was no dispute in that case that the
attorney had a lien under ORS 87.445, see Potter v. Schlesser Co., Inc.,

Page 13 - MEMORANDUM OPINION

171 Or. App. 646, 648 (2000) (client and attorney had a retainer agreement entitling the attorney to a one-third contingent fee), and the only dispute was whether that lien could be enforced against the defendant.  The court looked at ORS 87.475, which provides that "the lien created by ORS 87.445 is not affected by a settlement between the parties to the action," and that parties to the action do not have a right to satisfy the lien until the lien is paid.  335 Or. at 214.  Applying that statute, the court held that, "regardless of the alleged settlement between defendant and [the plaintiff in the case], [the attorney's] lien remains a charge on the action to which defendant is a party," and the defendant was obligated "to satisfy the [attorney's] lien to the extent of the action's value."  335 Or. at 215.

Potter did not deal with whether an attorney had a lien; it dealt with against whom the lien could be enforced.  Potter does not undermine Hahn; it deals with a different issue.[6]

Banaitis also deals with a different issue.  The question in that case was whether the portion of a payment in settlement of a lawsuit that

---

[6]  Brann also argues that Potter gave a definition of an attorney's lien that favors her position.  In Potter, the Supreme Court quoted Webster's Third New Int'l Dictionary 1306 (unabridged ed. 1993), which defined a "lien" as "a 'charge upon real or personal property for the satisfaction of some debt or duty ordinarily arising by operation of law' or 'a right in one to control or to hold and retain or enforce a charge against the property of another until some claim of the former is paid or satisfied[.]'"  335 Or. at 213.  Whatever the definition of "lien," the person asserting a lien must have a substantive right to that lien before it attaches to anything.  That definition does not displace the language of the attorney's lien statute, which requires an agreement, express or implied, between the attorney and client for compensation.  Here, Brann fails to demonstrate that she has a substantive right to a lien under ORS 87.445.

Page 14 - MEMORANDUM OPINION

1    was paid directly to the plaintiff's lawyers under a contingent fee
2    agreement should be included in the plaintiff's gross income for income
3    tax purposes.  The court looked at Oregon's statutes relating to
4    attorneys' liens, in particular ORS 87.475, which provides that parties
5    or other persons do not have the right to satisfy an attorney's lien
6    "until the lien, and claim of the attorney for fees based thereon, is
7    satisfied in full."  ORS 87.475(2).  Under Oregon law, the court
8    concluded, an attorney has rights in the recovery from a settled lawsuit,
9    and can "sue a third party for attorneys fees that were left unsatisfied
10   by a private settlement with the attorney's clients."  340 F.3d at 1082.
11   Because of the property interest granted to attorneys under Oregon law,
12   the portion of the settlement payment that went directly to the
13   plaintiff's lawyer was not included in the plaintiff's gross income.

14        As with Potter, there was no question in Banaitis that the attorney
15   had an attorney's lien.  The client had entered into a retainer agreement
16   with the lawyer, which provided for payment of a contingent fee.  The
17   issue that the court addressed related to the attorney's property
18   interest in the settlement recovery based on the undisputed lien.  That
19   is a very different question than the one that must be addressed in this
20   case, which is whether Brann had an attorney's lien on the client's cause
21   of action and settlement recovery.  Banaitis does not undermine the
22   holding in Hahn.

23        Brann argues that her argument is supported by a number of other
24   cases, including Carson v. McMahan, 215 Or. 38 (1958), and Robinowitz v.
25   Pozzi, 127 Or. App. 464 (1994).

26        Carson does not support Brann's argument.  That case was a dispute

Page 15 - MEMORANDUM OPINION

between the estates of two lawyers, Carson and McMahan. McMahan had hired Carson to work with him on a case. McMahan had a contingent fee agreement with the client. The case was successful, and the contingent fee was paid into the clerk of the court pending resolution of the dispute between the lawyers regarding allocation of the fee between them.

The issue was whether there had been an agreement between the two lawyers as to the compensation to which Carson would be entitled. The court noted that the general rule was that, if there is no agreement as to how to share fees between counsel who associate on a case, the fee is divided equally. Because the court concluded that there was no agreement that Carson would be paid on a per-service basis, Carson's estate was entitled to one-half of the recovery obtained in the litigation. The case focused on the nature of the arrangement between counsel who were engaged in jointly prosecuting the case, not on whether Carson's estate had an attorney's lien.

Brann argues that, in Carson, the Supreme Court imposed an attorney's lien in favor of Carson. The Supreme Court never imposed a lien. The court's opinion mentions a lien only once, and that is in its recitation of the allegations of the complaint. 215 Or. at 40. Although the parties made arguments about a lien in their Supreme Court briefs, the court never addressed the issue, likely because by the time the case got to the Supreme Court, the attorney fee portion of the proceeds of the litigation had been paid into the clerk of the court, and the only issue was the division of those proceeds between the two lawyers' estates. Carson does not stand for the proposition that an associated attorney has a right to an attorney's lien absent the client hiring associated

Page 16 - MEMORANDUM OPINION

counsel.

The issue in <u>Robinowitz</u> was how to allocate fees between trial counsel, who had lost, and appellate counsel, who had replaced trial counsel and obtained success for the client. Both attorneys had contingent fee agreements with the client. The court rejected trial counsel's claim for quantum meruit, concluding that the evidence did not support a finding that appellate counsel had a reasonable expectation that he would have to pay trial counsel's fees out of his portion of the recovery. Trial counsel's claim of an attorney's lien failed because he had not perfected that lien. The case did not deal with the question of whether trial counsel would have been entitled to a lien based on his contingent fee agreement with the client, if the lien had been perfected.

Brann also argues that, even if she did not have an express agreement for compensation with the client, under ORS 87.445, she has a lien for the reasonable value of her services. The statute provides that an attorney has a lien on the action "for the reasonable value of the services of the attorney" if there is no specific agreement as to fees. This is in substance a claim for quantum meruit. Brann has provided evidence of the services that she performed and argues that the fees she claims are reasonable.

<u>Hahn</u>, however, forecloses this argument as well. The associated attorney in <u>Hahn</u> argued, as does Brann, that he had a right to the reasonable value of his services even if he did not have a lien for fees based on an agreement with the clients. The court rejected the argument:

> "The purpose of *quantum meruit* is to prevent unjust enrichment at the expense of another." <u>Schroeder v. Schaefer</u>, 258 Or. 444, 483 P.2d 818, 820 (1971). But recovery in *quantum meruit* is not

appropriate where there is a valid contract covering the subject matter of the dispute. [Citation omitted.] The operative contract in this instance is appellant's agreement for fees with [the hired attorney], which conclusively establishes that appellant's claim was properly against [the hired attorney], not against the [clients].

786 F.2d at 1355.

So too here. Brann had an express agreement with debtor for an hourly fee for her services. That is the operative contract, and conclusively establishes that her claim is properly against debtor, not against the clients.

As the court said in _Hahn_, the purpose of _quantum meruit_ is to prevent unjust enrichment. The attorney's lien would attach to the clients' actions; Brann does not explain how the clients would be unjustly enriched at her expense if she is not entitled to a lien on their actions.

At the hearing on these motions, Brann asserted that she should at least be entitled to an attorney's lien on the Pain Pump cases that were filed in Minnesota, based on Minnesota attorney lien law. I disagree.

First, Brann based her motion for summary judgment on Oregon, not Minnesota, lien law, asserting that she has a right to a lien under ORS 87.445. Although she argued briefly in her response to debtor's motion for summary judgment that, if debtor was relying on non-Oregon law with regard to liens on causes of action filed in other states, and if the court were to make a choice of law ruling that the pertinent lien law is the law of the jurisdiction where each case was filed, the court should apply Minnesota law to the Minnesota cases.[7] Debtor did not make a

----

[7] "The existence and effect of an attorney's lien is governed by

(continued...)

choice of law argument and did not rely on the law of other states in support of its motion or in opposition to Brann's motion.  Brann's argument based on Minnesota law was dependent on the court's agreement with debtor on a choice of law argument that debtor never made.

Second, even if I were to apply Minnesota law, I am not convinced that it would support imposition of an attorney's lien in this case. Brann's only citation to Minnesota law was to <u>Meacham v. Ballard & Co.</u>, 184 Minn. 607 (1932), which she says stands for the proposition that Minnesota law provides that an attorney who rendered services in an action is entitled an attorney's lien.  That is not how I read Minnesota law.  As in Oregon, Minnesota's right to an attorney's lien is statutory. Minn. Stat. § 481.13(1)(a) provides that "[a]n attorney has a lien for compensation <u>whether the agreement for compensation is express or implied</u>" upon the cause of action and upon the client's interest in "money or property involved in or affected by any action or proceeding in which the attorney may have been employed[.]"  (Emphasis supplied.) Thus, just as in Oregon, "a lien for compensation exists based on an underlying 'agreement for compensation' between the attorney and client." <u>Dorsey & Whitney LLP v. Grossman</u>, 749 N.W.2d 409, 417 (Minn. App. 2008). "The statute does not create an agreement to pay attorney's fees, but only imposes a lien to protect an attorney who already has such an

---

[7](...continued)
the law of the place in which the contract between the attorney and the client is to be performed, that is, the jurisdiction in which a contemplated action or proceeding is to be instituted."  7 AM.JUR.2D <u>Attorneys at Law</u> § 338 (2007) (footnote omitted).  Here, there is no contract between Brann and the client.

Page 19 - MEMORANDUM OPINION

agreement." Williams v. Dow Chemical Co., 415 N.W.2d 20, 26 (Minn. App. 1987). Even if Minnesota law applied, Brann would not be entitled to an attorney's lien because she never had an agreement, express or implied, with the clients for her compensation.

Finally, Brann argues that debtor is judicially estopped from denying her lien, because debtor has been paying other co-counsel outside of the estate, thereby admitting that those counsel have attorney's liens.

Judicial estoppel is an equitable doctrine that "'precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.'" In re Hoopai, 581 F.3d 1090, 1097 (9th Cir. 2009) (quoting Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir. 2008)). In deciding whether to apply judicial estoppel, the court should consider

> "(1) whether a party's later position is 'clearly inconsistent' with
> its original position; (2) whether the party has successfully
> persuaded the court of the earlier position, and (3) whether
> allowing the inconsistent position would allow the party to 'derive
> an unfair advantage or impose an unfair detriment on the opposing
> party.'"

Id. (quoting United States v. Ibrahim, 522 F.3d 1003, 1009 (9th Cir. 2008)). Application of judicial estoppel is restricted "to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778, 783 (9th Cir. 2001).

I will not apply judicial estoppel in this situation. First, there is no clear evidence that debtor has taken inconsistent positions by paying fees to associated counsel outside the estate. Brann says in her

Page 20 - MEMORANDUM OPINION

declaration that she has "compared debtor's cash collateral budget with its confidential pain pump settlement projections.  The amounts shown as projected revenue in debtor's budget are very near to the amounts of their projections for pain pump revenue net of all of these co-counsel fees."  Brann Declaration Supporting Motion for Summary Judgment at ¶ 15a.  This is not evidence that establishes that debtor is treating other attorneys in Brann's position as having liens on the recoveries.

Second, there is no evidence that, even if debtor is paying other similarly situated attorneys outside the estate, debtor has obtained a favorable result from the court based on those payments.  If debtor is improperly paying associated counsel who do not have attorney's liens outside the estate, that conduct might support some sort of sanction or other remedy; it does not support precluding debtor from arguing that Brann does not have an attorney's lien.  In fact, the remedy Brann seeks would result in payment of her claim ahead of Sterling Bank and the unsecured creditors.  Neither Sterling Bank nor unsecured creditors have engaged in any inequitable conduct that would justify moving Brann to the head of the payment line.

Brann's assertion of an attorney's charging lien lacks a basis in an obligation of the client to pay the fees.  She claims a lien for the aggregate fees to which she is entitled, against the portion of all recoveries from all Pain Pump clients that has come into debtor's hands as payment for its attorney fees, regardless of whether she worked on the file of the client who obtained a recovery and whether a particular client's case on which she worked was successful.  She does not claim a specific fee (or the reasonable value of services provided) on a

Page 21 - MEMORANDUM OPINION

particular client's recovery for a specific amount based on her work done
on that client's file. Her agreement with debtor said that she was
providing legal services to debtor and made certain that the risk of
recovery was on debtor, not on Brann. She submitted her bills to debtor,
not to the clients. In the absence of an agreement for fees between
Brann and the clients, Brann is not entitled to an attorney's charging
lien.

There is no genuine issue about any material fact in this case.
Brann's right to compensation comes from her agreement with debtor, not
from any agreement, either express or implied, with the clients. That
right to compensation entitles her to a set hourly amount regardless of
whether any cases were successfully resolved, as well as to additional
success-based hourly fees, regardless of whether the successful cases
generated sufficient funds to pay her fees. Debtor must pay the fees to
Brann regardless of whether Brann worked on any of the cases that were
successful, of the amount of fees payable by the clients to debtor, and
of whether any clients actually pay any fees to debtor.

Under ORS 87.445 and Hahn, Brann is not entitled to an attorney's
lien on the clients' causes of action or any recoveries that ended up in
debtor's hands, either for the hourly fee set out in the agreement or for
the reasonable value of her services. Brann cannot "'bootstrap' a breach
of contract action against another attorney into an attorney's lien"
under Oregon law. See Harvey L. Lerer, Inc. v. Eighth Judicial Dist.
Ct., 111 Nev. 1165, 1169 (1995) (applying similar statute).

////

////

Page 22 - MEMORANDUM OPINION

CONCLUSION

2      The issue in these motions is whether Brann has an attorney's lien

3 for the fees she is owed for her work on the Pain Pump cases.  For the

4 reasons set out above, I conclude that she does not have a lien.  I will

5 grant debtor's motion for summary judgment and deny Brann's motion for

6 summary judgment.  Mr. Kennedy should submit the order and a separate

7 judgment.

8                                  ###

9 cc:  Heather A. Brann
       Gary U. Scharff
10     Albert N. Kennedy
       David W. Criswell

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 23 - MEMORANDUM OPINION