# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

| ELIZABETH L. PERRIS<br>BANKRUPTCY JUDGE | 1001 S.W. FIFTH AVENUE, # 700<br>PORTLAND, OREGON 97204<br>(503) 326-1536 | DIANE K. BRIDGE, LAW CLERK<br>BETHANY COLEMAN-FIRE, LAW CLERK |
|---|---|---|

**TRANSMITTED VIA ECF**

January 11, 2013

Albert N. Kennedy
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Ave.
Portland, OR  97204

Michael A. Cox
Law Office of Michael A. Cox
7420 SW Bridgeport Road, Ste. 101
Tigard, OR  97224

>       Re:  <u>Williams, Love, O'Leary, & Powers, PC v. Brann</u>,
>            Adv. No. 11-3279
>            Debtor's Motion for Summary Judgment (Doc. #336)
>            Brann's Motion for Summary Judgment (Doc. #339)

Dear Counsel:

The court held a hearing on plaintiff debtor's and defendant Heather Brann's motions for summary judgment on January 7, 2013. Having considered the arguments and submissions of counsel, this letter sets out my ruling on the motions.

Debtor filed this action for a determination that Brann does not have an attorney's lien securing amounts due to her for legal work she performed on what are called Pain Pump cases. The original claim was determined in favor of debtor, certified as final, and was affirmed by the district court. Brann has filed a notice of appeal with the Ninth Circuit.

After debtor's claim was determined, Brann filed a number of counterclaims, some of which have earlier been determined. Debtor now moves for summary judgment on all remaining counterclaims except for Counterclaim #3. Brann moves for summary judgment on Counterclaim #3. Therefore, all remaining counterclaims are the subject of these summary judgment motions.

SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.

BACKGROUND FACTS

Brann was a contract lawyer for debtor, providing legal services on Pain Pump cases pursuant to an engagement letter dated August 9, 2009. The agreement between the parties provided that Brann would be paid an hourly rate for her work, with additional payments (Tier 2 and Tier 3 fees) if a certain number of the Pain Pump cases were successfully resolved.

In December 2010, debtor advised Brann that it could not afford to pay her the Tier 2 fees that had come due, and it terminated the agreement. However, Brann continued to work on the Pain Pump cases with debtor until May 2011, when her work with debtor was terminated completely.

Debtor filed a chapter 11 petition in August 2011. Brann filed claims for her Tier 2 and Tier 3 fees, claiming that those fees were secured by an attorney's lien on the clients' recoveries. On debtor's motion for summary judgment, this court held that Brann does not have an attorney's lien. On appeal, the district court affirmed. Brann has filed a notice of appeal with the Ninth Circuit. The claims for Tier 2 and Tier 3 fees were allowed as unsecured claims.

Debtor confirmed its chapter 11 plan in September 2012. It provides for payment in full of all unsecured claims.

DISCUSSION

1. <u>Debtor's Motion for Summary Judgment</u>

    A. <u>Counterclaim #1 - Declaratory Relief for Breach of Contract</u>

In this counterclaim, Brann seeks a declaration that debtor breached its August 9, 2009, engagement agreement with Brann in various ways. Debtor seeks summary judgment, arguing that there is no controversy between the parties that warrants issuance of a declaratory judgment.

In order to be entitled to a declaratory judgment, the plaintiff (here Brann) must allege an "actual controversy." 28 U.S.C. § 2201(a). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. of Hartford v. Haworth, Conn., 300 U.S. 227, 240-241 (1937). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). Even where there is an actual controversy, the "granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest." 10B Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2759 at 540 (1998) (footnote omitted); see also Natural Resources Defense Council, Inc. v. U.S. E.P.A., 966 F.2d 1292, 1299 (9th Cir. 1992).

Brann first argues that her claim is not subject to the Declaratory Judgment Act, but instead is governed by the Oregon declaratory judgment statute, ORS 28.010. Brann is wrong. ORS 28.010 governs actions in state court. Although Brann argues that the filing of the bankruptcy petition "effectively removed Ms. Brann's pending state action to this adversary proceeding," Brann's Memorandum in Opposition to Motion for Summary Judgment (Doc. #357) at 3, this is not a removed action. Brann brought this counterclaim in federal court, and it is subject to the federal Declaratory Judgment Act.

Brann also argues that Fed. R. Bankr. P. 7001(9) requires the bankruptcy court to determine any request for declaratory judgment that relates to rights to recover money or property or to obtain equitable relief as part of an adversary proceeding. Rule 7001 merely describes what matters must be brought as adversary proceedings; it does not require courts to decide claims that have no effect on the bankruptcy estate.

Brann filed proofs of claim #17 and #18 as secured claims for the Tier 2 and Tier 3 fees to which she was entitled under the engagement letter and which debtor had failed to pay, and her Counterclaims #11 and #12 sought liquidation of those claims. This court has determined, and the district court has affirmed, that Brann does not have an attorney's lien, and this court has allowed the claims for the amounts due under the engagement letter as unsecured claims and has entered judgment for Brann on

her Counterclaims #11 and #12. Debtor's confirmed plan requires payment of those claims in full. Brann's request for a declaration of breach of other provisions of the agreement would not affect debtor's liability, which this court has already determined.

Brann argues that she is entitled to the declaration she seeks because the court has not adjudicated some portions of the claim and the breaches are ongoing, and "[t]hese declarations will clarify that Brann is excused from further performance under the contract." Brann's Memorandum in Opposition to Motion for Summary Judgment (Doc. #357) at 4.

First of all, I know of no claim by any party that Brann has further performance due under the engagement agreement, so there is no reason to make a declaration that she is excused from future performance.

Second, excuse from future performance is a different justification for needing declaratory relief than the one Brann provided to the court in response to the court's letter dated October 9, 2012 (Doc. #251), in which Brann said that she needed a declaration that debtor breached the engagement agreement to

> assist Ms. Brann in pursuing corporate veil piercing and direct claims against debtor's partners as appropriate in state court. The declaration will also assist the trier of fact in determining damages resulting from those breaches, and may afford Ms. Brann a right of specific performance where damages are inadequate.

Summary of Counterclaims Remaining for Trial and Damages (Doc. #286) at 3.

The declaration Brann seeks would not affect debtor's liability to Brann. This court will not make a declaration that may affect third-party litigation but will not affect debtor's liability. Even if there is a live controversy, I will exercise my discretion not to enter the declaration Brann seeks, because the issues relating to debtor's breach of the engagement agreement that affect this bankruptcy case have already been decided, and Brann is not entitled to more than that.

Debtor is entitled to summary judgment on Counterclaim #1. Dismissal of this claim against debtor is not intended to have

Albert N. Kennedy
Michael A. Cox
January 11, 2013
Page 5

any effect on any claims Brann may have against third parties who are not parties to this litigation.

    B.    <u>Counterclaim #2 - Specific Performance</u>

This counterclaim seeks specific performance of the provision in the engagement agreement that Brann asserts requires debtor to obtain each Pain Pump client's consent to sharing its gross attorney fee with Brann. Brann's view is that debtor's failure to obtain the consents deprived her of her statutory attorney's lien under ORS 87.445.

Debtor argues that this counterclaim should be dismissed, because any equitable right to specific performance of the engagement agreement relating to Tier 2 and Tier 3 fees is a "claim" that was discharged by confirmation of debtor's chapter 11 plan.

Confirmation of a chapter 11 plan discharges the debtor from any debt that arose before confirmation. § 1141(d)(1). A "debt" is a "liability on a claim." § 101(12). "Claim" as relevant here is defined as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment[.]" § 101(5)(B). As a creditor, Brann is bound by the provisions of the confirmed plan. § 1141(a). Debtor's plan provides for payment in full of Brann's unsecured claims; it does not provide for any kind of specific performance.

Debtor's breach of its obligation to pay Tier 2 and Tier 3 fees gave rise to a right to payment, and that right to payment has been reduced to judgment. This court has entered a final judgment declaring that Brann does not have an attorney's lien securing her claims, and the district court has affirmed that judgment. The plan treats Brann's claims for payment of the fees owed pursuant to the engagement agreement as unsecured claims.

In this counterclaim as alleged, Brann asks only for specific performance of the engagement agreement, requiring debtor to obtain Pain Pump clients' consent to an attorney's lien on their recoveries, securing payment of fees based on the number of hours billed to that client and allocating general billing hours to each successful client.

There is nothing in the engagement agreement between debtor and Brann that requires debtor to obtain clients' consent to having their recoveries serve as security for payment of Brann's

hourly fees. The engagement letter requires debtor to "ensure that any client with respect to which I render legal services for a PP [Pain Pump] Matter consents to WLOP sharing its fees with me." Engagement Letter at 2. There is no agreement that could be specifically enforced that debtor would obtain clients' consent to creation of an attorney's lien on their recoveries, allocated based on the number of hours Brann worked on their cases and allocating general Pain Pump work among all of the clients.

Although the counterclaim prays for specific performance, Brann now argues that she is entitled to equitable compensation, which she claims is different from damages. This is not the relief that is prayed for in the counterclaim, and Brann has not amended her counterclaim.

Because the engagement agreement does not contain any provision requiring debtor to perform the obligations that Brann seeks to specifically enforce, debtor is entitled to summary judgment on this claim.

    C.    <u>Counterclaim #7 - Statutory Liability for Wages</u>

In Counterclaim #7, Brann seeks statutory damages under state law for debtor's failure to pay her wages when it terminated her engagement agreement on December 31, 2010 and then terminated her work for the firm completely in May 2011, and damages under federal law for retaliatory discharge for debtor's May 2011 termination.

The issue regarding this claim is whether Brann was an employee of debtor for purposes of state and federal employment law. The evidence presented by both parties demonstrates that there is a genuine issue of material fact as to the nature of the relationship between Brann and debtor. Debtor's motion for summary judgment will be denied on this counterclaim.

    D.    <u>Counterclaim #8 - Promissory Estoppel</u>

Brann alleges that debtor promised her additional work on Pain Pump and hormone replacement therapy cases if she forbore from collecting her Tier 2 fees, that she reasonably relied on that representation in forbearing, and that the reliance caused her to change her position by not obtaining a judgment lien before debtor filed chapter 11 and by failing to pursue other sources of revenue. She asks for specific performance of

debtor's promise or, in the alternative, damages for breach of the promise.

Brann has clarified that this counterclaim is an alternative theory to Counterclaim #3 for seeking payment for her work on Pain Pump cases in 2011. Brann's Summary of Counterclaims and Damages (Doc. #286) at 4.

Debtor argues that it is entitled to summary judgment on the specific performance alternative of this counterclaim, because any equitable claim has been discharged by the confirmed plan. To the extent this counterclaim seeks payment for 2011 as an alternative theory of recovery for 2011 work, debtor agrees that the summary judgment result should be the same for this claim as it is for Counterclaim #3.

I agree with debtor that any claim for specific performance was discharged by confirmation of debtor's chapter 11 plan, which did not provide for any specific performance. Therefore, I will strike the allegation in Brann's counterclaim that seeks specific performance.

However, the part of this counterclaim that is an alternative theory for recovery of the value of Brann's 2011 work was not discharged by the plan confirmation. As I will discuss later, debtor's motion for summary judgment will be denied on Counterclaim #3; therefore, I will also deny summary judgment on this counterclaim. Brann's claim for damages under this theory is limited to her claim for the reasonable value of her 2011 services on Pain Pump cases.

    E.    <u>Counterclaim #9 - Negligent Misrepresentation</u>

Brann alleges that debtor made certain misrepresentations to her in the course of negotiations regarding debtor's payment of Brann's Tier 2 fees and possible continued or renewed contract with debtor, which were designed to induce Brann to forbear attempting to collect her fee, and that she relied on those representations in her dealings with debtor. Debtor argues that it is entitled to summary judgment on this claim, because debtor had no duty to Brann that would give rise to a negligent misrepresentation claim in Oregon.

Under Oregon law, a person "ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." <u>Hale v. Groce</u>, 304 Or. 281,

284 (1987). In order to be liable for negligence that causes purely economic loss, the actor must be subject to some duty outside the common law duty to exercise reasonable care to prevent foreseeable harm. Onita Pacific Corp. v. Trustees of Bronson, 315 Or. 149, 159 (1992). "[I]n the context of a negligent misrepresentation case, [the Supreme Court] concluded that, if a plaintiff can demonstrate that a defendant is subject to a heightened duty over and above the generic common-law duty to exercise reasonable care to prevent foreseeable harm, the plaintiff can bring a cause of action for economic loss based on his or her reliance on the misrepresentation." Bell v. Public Employees Retirement Board, 239 Or. App. 239,, 245 (2010) (citing Onita, 315 Or. at 159).

 The heightened duty "may arise from a duty imposed by statute where the legislature has imposed a duty to act and has 'contemplate[d] that there could be liability in connection with the authority and duty to take the actions' required by the statute." Loosli v. City of Salem, 215 Or. App. 502, 506 (2007) (quoting Scovill v. City of Astoria, 324 Or. 159, 169-70 (1996)).

 Or the duty may arise from the existence of a special relationship between the parties that gives rise to "a duty 'beyond the common law duty to exercise reasonable care to prevent foreseeable harm' to the other party." Conway v. Pacific Univ., 324 Or. 231, 236 (1996) (quoting Onita, 315 Or. at 159).

> [The] heightened duty arises <u>when one party is acting, at least in part, to further the economic interests of the other party</u>. In other words, for the duty to avoid making negligent misrepresentations to arise, the parties must be in a "special relationship," in which <u>the party sought to be held liable had some obligation to pursue the interests of the other party</u>.

Conway, 324 Or. at 236-37 (emphasis supplied). This special duty arises

> because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue

      to the latter, the former has a right to rely upon the
latter to achieve a desired outcome or resolution.

<u>Id.</u> at 240.  The types of special relationships that have been held to carry this heightened duty of care include professionals, including attorneys, to their clients, engineers and architects to their clients, agents to their principals, trustees to their beneficiaries, and liability insurers to their insured.  <u>Id.</u> at 239-40.

      Debtor argues that it was not in a special relationship with Brann that would give rise to liability for negligent misrepresentation.  Its position is that, when two parties are negotiating at arm's length on economic issues, there is no special relationship giving rise to the heightened duty of care, relying on <u>Conway</u>.

      In <u>Conway</u>, a professor left a tenure-track job at one university for a tenure-track job at Pacific University, relying on the Pacific University dean's representation that the professor's poor student evaluations would not be problem in attaining tenure.  In fact, the poor evaluations did affect his ability to attain tenure.  Conway sued for negligent misrepresentation, and argued that the employer-employee relationship was the type of special relationship that gave rise to a duty of care beyond the common law duty to exercise reasonable care to prevent harm.

      The Oregon Supreme Court disagreed.  Even though the parties were not strangers, the representations occurred during negotiations in which each party was acting on his or its own behalf.  "Conway did not authorize the university to exercise independent judgment in his behalf, by contract or otherwise, thereby placing him in the position of having a right to rely upon the university."  <u>Conway</u>, 324 Or. at 242.  Because each party was pursuing its own interests in the negotiations regarding the renewal of Conway's contract, the university was not in a special relationship with Conway that would give rise to liability for negligent misrepresentation.

      I agree with debtor that, in the context of the negotiations between debtor and Brann about when and how Brann would be paid her Tier 2 fees, including whether she would forgo pursuing collection of those fees, and the negotiations about a possible renewed contract with debtor, the parties were each acting in their own behalf, not on behalf of the other.  There is no

Albert N. Kennedy
Michael A. Cox
January 11, 2013
Page 10

evidence that Brann had authorized debtor to exercise its independent judgment on her behalf and in her interest. The parties were engaged in an arm's length negotiation. As in <u>Conway</u>, the fact that the parties had a preexisting contractual relationship did not mean that debtor was acting in Brann's interest rather than its own.

Brann argues that the "arm's length negotiation" rule does not apply when the negotiations are between lawyers, because lawyers have an ethical obligation not to make misrepresentations to other lawyers. She relies primarily on <u>In re Porter</u>, 320 Or. 692 (1995), in which the Supreme Court disciplined an attorney for making a misrepresentation to opposing counsel, in violation of the former ethical rule that provided that it was professional misconduct to engage in conduct involving misrepresentation.[1] In considering a sanction, the court said:

> Conduct by which one lawyer seeks to dupe another lawyer (and the latter's client) tears at the fabric of the legal profession, which can expect to have no better reputation for trustworthiness in the community than that of its worst actors. Misconduct of the kind demonstrated here not only damages the reputation of the legal profession, but also breeds distrust among practitioners, tempting rational lawyers to follow suit, rather than be made the fool.

<u>Id.</u> at 707-08. From this case, Brann argues that lawyers are held to a higher standard of truthfulness than other professionals, and this standard translates into a duty of care beyond the common law duty that gives rise to a liability for negligence.

---

[1] The Disciplinary Rule at issue in <u>Porter</u> was DR 1-102(A)(3), which provided that it was "professional misconduct for a lawyer to . . . [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Disciplinary Rules have been replaced by the Oregon Rules of Professional Conduct. RPC 4.1(a) now prohibits a lawyer from knowingly making "a false statement of material fact or law to a third person" while representing a client; RPC 8.4(a)(3) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness to practice law." These rules are not quite as broad as DR 1-102(A)(3), which had no limiting language.

The cases are clear that a duty of care to prevent purely economic loss can arise either from a statute or from a special relationship between the parties. The Rules of Professional Conduct are not statutes; they are ethical rules enforced by the Oregon Supreme Court. Their breach gives rise to professional discipline, not to damages. Even assuming that professional ethical rules could provide a basis for negligence liability, there is no indication that the Supreme Court in adopting the rules contemplated that there would be liability in tort for violation of those rules.

Brann argues that the contractual relationship between her and debtor was that of co-counsel representing joint clients, and that the ethics rules require a heightened duty of transparency with regard to co-counsel working out their financial arrangements for the representation of the clients.

There is no authority for the proposition that the relationship of co-counsel in making financial agreements between themselves for the sharing of fees or other payment arrangements results in any heightened duty of care between the lawyers.

Because there is no statutory duty that would support a negligence claim under these facts, the question is whether there was a special relationship between debtor and Brann that would give rise to that duty.

Brann argues that the duty arose because debtor was her agent. The principal-agent relationship imposes duties independent of the terms of the agreement, which can give rise to liability in tort for negligent performance of those duties. See Hampton Tree Farms, Inc. v. Jewett, 320 Or. 599, 617 (1995).

In order for there to be an agency relationship, "two requirements must be met: (1) the individual must be subject to another's control; and (2) the individual must 'act on behalf of' the other person." Vaughn v. First Transit, Inc., 346 Or. 128, 136 (2009). A principal's "'control' over what the agent shall or shall not do is necessary for an agency relationship[.]" Id.

There is no evidence in the summary judgment record that would support a finding that debtor was an agent of Brann during the 2010 and 2011 negotiations, which is when the alleged misrepresentations were made. Brann cites to her Response Statement of Fact (Doc. #355), ¶ 27 Exh. 2 and ¶¶ 38 and 39. The exhibit and the responses to debtor's statements of fact that

Albert N. Kennedy
Michael A. Cox
January 11, 2013
Page 12

Brann cites relate to the engagement agreement between debtor and Brann. Although the agreement does provide that debtor would ensure that clients consented to debtor sharing fees with Brann, and that the risk of delay or failure of settlement or judgment payments on Pain Pump cases would be borne by debtor, Engagement Agreement at 3, Brann does not point to anything in the agreement that indicates debtor was subject to Brann's control in any situation. Although Brann argues that she had given control to debtor to protect her lien rights by imposing on debtor a duty to obtain the clients' written consent to fee sharing, the agreement merely imposed a contractual obligation to ensure that clients consented to debtor's sharing its fees with Brann; it did not make debtor Brann's agent subject to her control. Without Brann's control over debtor, there is no agency.[2]

Finally, Brann argues that there is a special relationship based on debtor's duty under the engagement agreement that required debtor to affect proper fee sharing from the clients. It is not clear whether this is a different argument from Brann's ethics rule or agency arguments. In any event, in order for tort liability to exist for negligent performance of a contractual obligation, the duty that was breached must have arisen independent of the contract. See Georgetown Realty, Inc. v. Home Ins. Co., 313 Or. 97, 106 (1992). The obligation on which Brann relies, to obtain clients' consent to fee sharing, arises out of the contract, not independent of it. The obligation exists to protect clients, not to protect an attorney who is in an arm's length contractual relationship with another attorney. To the extent the obligation is negligently breached, it does not give rise to tort liability.

I conclude that debtor is entitled to summary judgment on the negligent misrepresentation counterclaim.

F.   Counterclaim #10 - Judicial Estoppel

Brann alleges that debtor is judicially estopped from claiming that this is a core proceeding and from claiming that

---

[2]   I also note that Brann's argument for an agency relationship, which necessarily requires that she have control over the actions of debtor, is directly contrary to her position in the state and federal employment claims that she was an employee of debtor, which requires that debtor had a right to control Brann's work.

Brann does not have a lien, based on its schedules and budgets submitted in this court and payment of co-counsel other than Brann.

Debtor points out that this court has already determined that whether Brann has a lien is a core proceeding, and that Brann does not have a lien.

I agree. Judicial estoppel is an equitable doctrine that "'precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.'" In re Hoopai, 581 F.3d 1090, 1097 (9th Cir. 2009) (quoting Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir. 2008)). It is an affirmative defense, not an independent claim. See Fed. R. Bankr. P. 7008 (making Fed. R. Civ. P. 8 applicable to adversary proceedings); Fed. R. Civ. P. 8(c)(1) (estoppel is an affirmative defense).

Brann raised the issue of judicial estoppel in opposition to debtor's claim for a declaration that she does not have a lien; this court rejected her defense and held that Brann does not have a lien. See Memorandum Opinion entered February 7, 2012 (Doc. #77) at 20-21. Brann' assertion of judicial estoppel against debtor has already been rejected.

In addition, debtor's position that Laura Kalur and Jeffry Wihtol could be paid during the bankruptcy case is not inconsistent with debtor's position that Brann could not be paid. Contrary to Brann's argument, she was not in the same situation as Kalur and Wihtol. Kalur and Wihtol had executory contracts with debtor that debtor assumed. See Ruling on Motion to Assume Contracts entered May 2, 2012 (Case No. 11-37021, Doc. #293); Order Authorizing Assumption of Executory Contracts entered June 13, 2012 (Case No. 11-37021, Doc. #324). Brann did not.

The issues that Brann seeks to judicially estop debtor from raising, that this is a core proceeding and that she does not have an attorney's lien, have already been decided. Debtor is entitled to summary judgment.[3]

---

[3] At the hearing on this motion, I indicated that I would grant debtor's motion on this counterclaim, but would limit it to issues regarding debtor's liability, not third-party liability. This counterclaim does not purport to affect parties other than
(continued...)

G. <u>Counterclaim #13 - Declaratory Judgment of Joint Venture</u>

Brann argues that she is entitled to a declaratory judgment that debtor was in a joint venture with Beasley Allen ("BA") with regard to the Pain Pump cases, and that the joint venture is liable to her for the payment of her fees. Debtor moves for summary judgment, arguing that there is no substantial controversy between debtor and Brann on this claim, and that Brann failed to join the other parties who would be affected by Brann's requested declaratory judgment.

Although Brann's pleaded counterclaim seeks a declaration that she should be paid by the joint venture from non-estate funds, that she is entitled to enforce payment of her fee claims against the joint venture, and that such a declaration should bind all joint venturers of debtor, Amended Answer and Counterclaims at ¶¶ 77, 79, 80, she now says that she seeks a declaration against debtor as agent for the joint venture that Brann is a creditor of the joint venture and that debtor is liable individually for her fees because it is a partner of the joint venture.

Brann already has a judgment against debtor for her Tier 2 and Tier 3 fees and allowed claims for those fees. If debtor is found liable for her 2011 fees, she will also have judgment for those fees and an allowed claim. A declaration that debtor is liable for the fees as a partner of a joint venture will add nothing to her claims; debtor is already liable for Brann's fees as the contracting party. There is no substantial controversy between Brann and debtor to be determined in a declaratory judgment.

Even if there were an actual controversy, I would exercise my discretion not to issue a declaratory judgment with regard to the alleged joint venture. First, I will not consider entering a declaratory judgment of joint venture without the parties to the alleged joint venture being before the court. Second, Brann has said in the past that she wants the declaration so that she can pursue the joint venture or other joint venturers in the event debtor does not pay. Debtor's plan requires it to pay its claims

---

[3](...continued)
debtor and Brann. Therefore judgment on this counterclaim will be with prejudice.

Albert N. Kennedy
Michael A. Cox
January 11, 2013
Page 15

to Brann in full.  If debtor does not comply with the plan, Brann's action against the third party alleged joint venture or its other alleged partners will not affect debtor.

Debtor is entitled to summary judgment on this counterclaim. This ruling relates solely to any liability of debtor; it is not intended to have any effect on any possible claims against any third parties.

2.  <u>Brann's Motion for Summary Judgment - Counterclaim #3 (Quantum Meruit)</u>

Brann moves for summary judgment on her third counterclaim, in which she seeks additional compensation for work she did on Pain Pump cases in 2011, after her engagement with debtor was terminated.  She claims that she is entitled to payment from debtor of $200 per hour for her 2011 work.  Debtor argues that there are issues of fact that preclude summary judgment on this counterclaim.

I conclude that the evidence provided shows that there are issues of fact both about whether debtor should be liable for the payment of additional fees and about the reasonable value of Brann's services.  Brann is not entitled to summary judgment on this counterclaim.

CONCLUSION

Debtor is entitled to summary judgment on Counterclaims #1, #2, #7, #9, #10, and #13.  I will deny debtor's motion on Counterclaim #8.  I will strike the request for specific performance in Counterclaim #8, because that claim has been discharged.  I will deny Brann's motion for summary judgment.

Mr. Kennedy should submit the order granting summary judgment on Counterclaims #1, #2, #7, #9, #10, and #13, denying summary judgment on Counterclaims #3 and #8, and striking the request for specific performance in Counterclaim #8.  I will not enter judgment at this time, but will wait until after the trial on all remaining counterclaims that begins on January 28, 2013,

and will enter final judgment after I have ruled on the remaining counterclaims.

                                            Very truly yours,

                                            *[signature]*

                                            ELIZABETH L. PERRIS
                                            Bankruptcy Judge